H:\ljg\23100921\dec action.doc
08/19/02 LJG/MMC/lap

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of T
FILED

SEP 0 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **ALLSTATE TEXAS LLOYDS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.- 0 2 - 17 1** |
| | § | **Non-Jury** |
| **TROY A. BOWER and SHARI R. BOWER,** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

ALLSTATE TEXAS LLOYDS ("Allstate"), Plaintiff, petitions the Court for construction of a liability insurance policy and a declaration that the Plaintiff has no duty to defend or indemnify the named party and that there is no coverage provided in connection with a suit presently pending against Troy A Bower, Shari R. Bower, and PestCom, Inc. in the 103rd Judicial District State Court, Cameron County, Texas, styled *David M. Garcia and Patricia Zimny vs. Troy A. Bower, Shari R. Bower and PestCom, Inc.* In support of this complaint, Plaintiff shows:

### I.

### PARTIES

1.    Plaintiff is an insurance company duly organized and existing under the laws of the State of Illinois, and authorized to issue homeowners insurance policies in the State of Texas, having its principal place of business in Illinois.

### II.

### SERVICE OF PROCESS

2.    Defendant, Troy A. Bower, an individual, is a non-resident of the State of Texas.  Said

Defendant may be served with process at his home at the following address: 1614 S. Massachusetts, Covington, Louisiana 70433. **Service of said Defendant by certified mail, return receipt requested, is requested.**

3.    Defendant, Shari R. Bower, an individual, is a non-resident of the State of Texas. Said Defendant may be served with process at her home at the following address: 1614 S. Massachusetts, Covington, Louisiana 70433. **Service of said Defendant by certified mail, return receipt requested, is requested.**

### III.

### VENUE AND JURISDICTION

4.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (West Supp. 1997) because Plaintiff is an entity incorporated in the State of Illinois, and Defendants are residents of Louisiana. Furthermore, the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The District Courts of the United States have original jurisdiction over this action based on complete diversity of citizenship between the parties. Venue is proper in the Southern District of Texas, Brownsville Division, because the action resulting in the underlying suit occurred in Cameron County, which is the Brownsville Division of the Southern District of Texas.

### IV.

### FACTUAL BACKGROUND

5.    Troy A. Bower and Shari R. Bower (hereinafter referred to as "Bowers") are the named insureds under a homeowners insurance policy issued by Plaintiff, bearing policy number 216986980. A true and correct copy of the policy is attached hereto as Exhibit "A" and incorporated by reference herein, the same as if fully copies and set forth at length.

The policy issued by Allstate provides as follows:

*If a claim is made or a suit is brought against an <u>insured</u> for damages because of <u>bodily injury</u> or <u>property damage</u> caused by an <u>occurrence</u> to which this coverage applies, we will:*

(1)  *Pay up to our limit of liability for the damages for which the insured legally liable;*

(2)  *Provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent.*

*<u>Occurrence</u> means "an accident, including exposure to conditions which result in injury or property damage during the policy period."*

*<u>Bodily injury</u> means "bodily harm, sickness or disease. This includes care, loss of services and death that results."*

*<u>Property damage</u> means "injury to, destruction of, or loss of use of property."*

The following pertinent exclusions are listed under Exclusions, Section II of the policy stating

that the above coverage will not be provided in certain instances:

I.  *COVERAGE C (personal liability) and COVERAGE D (medical payments to others) do not apply to:*

(A)  *Bodily injury or property damage which is caused intentionally by or at the direction of the insured;*

(E)  *Bodily injury or property damage arising out of a premises:*

*(1) owned by an insured;*
*(2) rented to an insured;*
*(3) rented to others by an insured; or*
*(4) that is not an insured location.*

2.  *COVERAGE C (personal liability) does not apply to:*

(A)  *Liability under any contract or agreement;*

(B)  *Property damage to property owned by an insured.*

<u>See</u> Exhibit "A" Insurance Policy Number 216986980.

6.     Defendants, Troy A Bower and Shari R. Bower were sued under Cause No. 2002-01-000077-D in the District Court, 103rd Judicial District, Cameron County, Texas (the underlying lawsuit).   The Plaintiffs in that lawsuit are David M. Garcia and Patricia Zimny.  A true and correct copy of the Plaintiffs' Original Petition from the underlying lawsuit is attached as Exhibit "B" and is incorporated by reference herein.

7.     Without admitting the validity of the facts set forth in the Plaintiffs' pleadings in the underlying lawsuit, the underlying Plaintiffs in that case contend that on or about January 13, 2000, they purchased a home in Harlingen, Texas from Troy and Shari Bower.  In connection with the sale of the home, the underlying Plaintiffs allege that the Bowers completed a "Seller's Disclosure Notice" as required by the Texas Property Code.  It is the underlying Plaintiffs' allegations that the Bowers indicated that the home had previously been treated for termites, but that there was no active infestation of the home by termites.  The underlying Plaintiffs also allege that Defendants had indicated that there was no previous damage to the home which had been repaired, and that there was no current damage needing repair.  Immediately after closing on the purchase of the home, the underlying Plaintiffs allege they noticed what appeared to be evidence of termite infestation of the home.  The underlying Plaintiffs contend they contacted a pest control operator to inspect the home for termite infestation.  According to the underlying Plaintiffs, they found pervasive termite infestation in their home which has caused substantial damage to their home, as well as evidence of prior repairs to their home due to termite damage.

In all, the underlying Plaintiffs make allegations against the Bowers for Deceptive Trade Practices, common law fraud, and negligence.  The underlying Plaintiffs claim as

damages out-of-pocket expenses, loss of the benefit of the bargain, diminished or reduced market value, and cost of repairs.

**V.**

**DUTY TO DEFEND AND INDEMNITY**

8.    Plaintiff is not obligated under the policy listed above to provide a defense or indemnity payments for suits which are not within the coverage afforded by the policy. The insuring agreement for the policy provides that Plaintiff is obligated to provide a defense and pay damages for claims arising out of "bodily injury" or "property damage" to which the insurance applies.  The policy applies to "bodily injury" and "property damage" only if it is caused by an "occurrence."  "Bodily injury" is defined as "bodily harm, sickness or disease."  "Occurrence" is defined as "an accident."  The homeowners policy contains express exclusions for "bodily injury or property damage which is cause intentionally by or at the direction of the insured," "property damage arising out of a premises owned by an insured, rented to an insured, or rented to others by an insured, that is not an insured location," "liability under any contract or agreement," and "property damage to property owned by an insured."

The underlying lawsuit does not allege facts constituting an "occurrence" or facts alleging "property damage" or "bodily injury."  Further, the policy expressly excludes liability for damages alleged to have been caused intentionally by or at the direction of the insured, as alleged in the underlying lawsuit.  The policy also expressly excludes coverage for "property damage" arising out of a premises owned by an insured that is not an insured location, property damage to property owned by an insured, and for liability under any contract agreement.

The allegations contained in the underlying lawsuit clearly negate coverage and Plaintiff does not have a duty to defend Defendants in this case.  Additionally, as the allegations are for non-covered claims, Plaintiff has no obligation to pay any part of any judgment that may be rendered against Defendants.

## VI.

## **REQUEST FOR DECLARATORY RELIEF**

9.    Bowers have demanded that Plaintiff provide a defense in the underlying lawsuit. Plaintiff seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that there is no duty to defend, indemnify, or coverage under the policy on the grounds that the underlying lawsuit is not within the coverage afforded by the policy and thus, there is no duty on Plaintiff to defend or indemnify Bowers or a duty to pay the judgment in the underlying lawsuit.  The cost of defending and/or indemnifying Bowers in the underlying lawsuit would be a sum in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, PREMISES, CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial, Plaintiff have the following:

A.    A declaration that Plaintiff is not under a duty to defend Bowers in the underlying lawsuit;

B.    A declaration that Plaintiff is not under a duty to indemnify Bowers in the underlying lawsuit.

C.    A declaration that there is no coverage afforded by the policy for the underlying lawsuit;

D.    Costs of Court; and

E.    Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

ADAMI, GOLDMAN & SHUFFIELD, INC.
The Nowlin Building
9311 San Pedro, Suite 900
San Antonio, Texas 78216
Telephone: (210) 344-0500
Telecopier: (210) 344-7228


By:_____
            LARRY J. GOLDMAN
            Fed. Bar No. 341
            (Attorney in Charge)
            MICHELLE M. COPELAND
            Fed. Bar No. 32067


ATTORNEY FOR PLAINTIFF

# EXHIBIT "A"

National Support Center
**Allstate Insurance Company**
1819 Electric Road S.W.
Roanoke VA 24018-1618
Bus: (540) 989-2200


**Allstate.**
You're in good hands.

Claim#  _820 301 7457_

To Whom It May Concern:

I, Linda Sisson, employee of Allstate Insurance Company, Roanoke, Virginia, do certify

that the enclosed is a copy of Policy Number____216986 980_____,

in the name of____Troy Bower_____,

showing the coverages that were on the policy at the time of loss of____1-13-00___.


_Linda Sisson_
Claim Support

State of Virginia, County of Roanoke

On this ___26th___ day of _____August_____, 2002, before me

personally appeared Linda Sisson to me known to be the person who executed the

foregoing instrument and acknowledged that she executed the same as a free act and

deed.


_Amy H. Haley_
Notary Public

My Commission Expires:

AMY H. HALEY
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 03/31/2004

PROCESS DATE 01/27/99 PRINT GROUP 9026-4700 POLICY NUMBER 2 16 986980 *** FOR: ANGIE HOLSHOUSER04AH - LOC: BRSC/ROANOKE 04AH *******

ALLSTATE TEXAS LLOYD'S

POLICY NUMBER:  2 16 986980 01/27          MEMORANDUM COPY

NAMED INSURED/MAILING ADDRESS: TROY?BOWER

                    2918 CLIFFORD
                    HARLINGEN TX 78550-8543

AGENT NAME/ADDRESS:  GEORGE MATTHEWS
                     5975 S COOPER #135
                     ARLINGTON TX 76017
          PHONE: 817 784-1008

MORTGAGE NAME/ADDRESS: MCAFEE MORTGAGE & INVESTMENT CO
LOAN NO.: NONE          ITS SUCCESSORS &/OR ASSIGNS
                        4416 74TH ST STE 85
                        LUBBOCK TX 79424-2315


ALLSTATE TEXAS LLOYD'S
8701 N FREEPORT PKY
IRVING, TX 75063-1908

IF YOU HAVE ANY QUESTIONS
PLEASE CONTACT YOUR ALLSTATE
AGENT OR OUR NEAREST OFFICE

POLICY NO.:      2 16 986980 01/27     ISSUED DATE:   01-27-1999
NEW POLICY
POLICY PERIOD:     EFFECTIVE DATE: JAN 27, 1999
                   EXPIRATION DATE: JAN 27, 2000
                   AT 12:01 A.M. STANDARD TIME AT THE LOCATION
                   OF THE RESIDENCE PREMISES/DWELLING
RESIDENCE PREMISES/DWELLING:
2918 CLIFFORD
HARLINGEN TX 78550-8543
INSIDE CITY LIMIT, CONSTRUCTION: BRICK VENEER
HYDRANT - UNDER 500 FT, KEY RATE: 4 , PPC: 04

                 POLICY MAILED TO:

                 TROY?BOWER
                 2918 CLIFFORD
                 HARLINGEN TX 78550-8543


APPLICABLE DISCOUNTS: 12% SECURITY DEVICE DISCOUNT APPLIED
  10% CLAIM FREE DISCOUNT APPLIED
  25% SUPPORTING AUTO DISCOUNT APPLIED

| COVERAGES | LIMITS OF LIABILITY | ANNUAL PREMIUMS |
|---|---|---|
| SECTION I PROPERTY | | |
| COVERAGE A. DWELLING | $137,577 | |
| OTHER STRUCTURES | $ 13,757 | |
| COVERAGE B. PERSONAL PROPERTY | $ 82,545 | |
| PERSONAL PROPERTY OFF PREMISES | $ 8,254 | |
| SECTION II LIABILITY | | |
| COVERAGE C. PERSONAL LIABILITY (EACH OCCURRENCE) | $100,000 | |
| COVERAGE D. MEDICAL PAYMENTS TO OTHERS (EACH PERSON) | $ 1,000 | |
| LOSS OF USE COVERAGE | $ 27,515 | |
| BASIC PREMIUM | $ | 612 |
| INCREASED LIABILITY LIMITS PREMIUM | $ | 7 |
| OTHER COVERAGES | | |
| RESIDENCE GLASS COVERAGE | $ | 6 |

TOTAL PREMIUM FOR THE POLICY PERIOD STATED IS  $ 625.00

SEE THE PAGE TO THE LEFT FOR A DESCRIPTION OF YOUR
COVERAGES, LIMITS OF LIABILITY AND DEDUCTIBLES

| DEDUCTIBLES (SECTION I ONLY) | AMOUNT OF DEDUCTIBLE |
|---|---|
| DEDUCTIBLE CLAUSE 1 | $ 1376 |
| DEDUCTIBLE CLAUSE 2 | $ 1376 |
| TOTAL POLICY PREMIUM | $ 625 |

ED-1 70 031 002 118019 0 70    1175006 2 78 1991
                                   150000 40

DO NOT PAY

MORTGAGEE HAS BEEN BILLED

SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS
  TEXAS HOMEOWNERS POLICY - FORM B (1-1-96)
  HO-101 (9-1-93) REPLACEMENT OF PERSONAL PROPERTY
  HO-105 (7-8-92) RESIDENCE GLASS COVERAGE

                    803714 01/27 90264700 70 HR

SEE ADDITIONAL INFORMATION ON THE BACK OF THIS PAGE.

PROCESS DATE 01/27/99 PRINT GROUP 9026-4700 POLICY NUMBER 2 16 986980 \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ALLSTATE TEXAS LLOYD'S

POLICY NUMBER: 2 16 986980 01/27

NAMED INSURED/MAILING ADDRESS: TROY/BOWER

    2918 CLIFFORD
    HARLINGEN TX 78550-8543

AGENT NAME/ADDRESS: GEORGE MATTHEWS
    5975 S COOPER #135
    ARLINGTON TX 76017
    PHONE: 817 784-1008

MORTGAGEE NAME/ADDRESS: MCAFEE MORTGAGE & INVESTMENT CO
LOAN NO.: NONE     ITS SUCCESSORS &/OR ASSIGNS
    4416 74TH ST STE 85
    LUBBOCK TX 79424-2315

| COVERAGES | LIMITS OF LIABILITY | ANNUAL PREMIUMS |
|---|---|---|
| SECTION I PROPERTY | | |
| COVERAGE A. DWELLING | $137,577 | |
| OTHER STRUCTURES | $13,757 | |
| COVERAGE B. PERSONAL PROPERTY | $82,545 | |
| PERSONAL PROPERTY OFF PREMISES | $ 8,254 | |
| SECTION II LIABILITY | | |
| COVERAGE C. PERSONAL LIABILITY | | |
| (EACH OCCURRENCE) | $100,000 | |
| COVERAGE D. MEDICAL PAYMENTS TO OTHERS | | |
| (EACH PERSON) | $ 1,000 | |
| LOSS OF USE COVERAGE | $ 27,515 | |
| BASIC PREMIUM | $ | 612 |
| INCREASED LIABILITY LIMITS PREMIUM | $ | 7 |
| OTHER COVERAGES | | |
| RESIDENCE GLASS COVERAGE | $ | 6 |

| DEDUCTIBLES (SECTION I ONLY) | AMOUNT OF DEDUCTIBLE |
|---|---|
| DEDUCTIBLE CLAUSE 1 | $ 1376 |
| DEDUCTIBLE CLAUSE 2 | $ 1376 |
| TOTAL POLICY PREMIUM | $ 625 |

SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS
  TEXAS HOMEOWNERS POLICY - FORM B (1-1-96)
  HO-101 (9-1-95) REPLACEMENT OF PERSONAL PROPERTY
  HO-105 (7-6-92) RESIDENCE GLASS COVERAGE

SEE ADDITIONAL INFORMATION ON THE BACK OF THIS PAGE.

---

ALLSTATE TEXAS LLOYD'S
8701 N FREEPORT PKY
IRVING, TX 75063,1908

IF YOU HAVE ANY QUESTIONS
PLEASE CONTACT OUR MORTGAGE
RELATIONS CENTER, PO BOX
660649, DALLAS TX 75266-0649
POLICY NO.: 2 16 986980 01/27 ISSUED DATE: 01-27-1999
NEW POLICY
POLICY PERIOD: EFFECTIVE DATE: JAN 27, 1999
    EXPIRATION DATE: JAN 27, 2000
    AT 12:01 A.M. STANDARD TIME AT THE LOCATION
    OF THE RESIDENCE PREMISES/DWELLING

RESIDENCE PREMISES/DWELLING:
2918 CLIFFORD
HARLINGEN TX 78550-8543
INSIDE CITY LIMIT, CONSTRUCTION: BRICK VENEER
HYDRANT - UNDER 500 FT, KEY RATE: 4 , PPC: 04

POLICY MAILED TO:

    MCAFEE MORTGAGE & INVESTMENT CO
    ITS SUCCESSORS &/OR ASSIGNS
    4416 74TH ST STE 85
    LUBBOCK TX 79424-2315

APPLICABLE DISCOUNTS: 12% SECURITY DEVICE DISCOUNT APPLIED
10% CLAIM FREE DISCOUNT APPLIED
25% SUPPORTING AUTO DISCOUNT APPLIED

TOTAL PREMIUM FOR THE POLICY PERIOD STATED IS $ 625.00

SEE THE PAGE TO THE LEFT FOR A DESCRIPTION OF YOUR
COVERAGES, LIMITS OF LIABILITY AND DEDUCTIBLES

ED-1 70 031 002 118019 0 70   1175006 2 78 1991
    150000 40

PLEASE NOTE: THIS IS NOT A REQUEST FOR PAYMENT.

ANY ADJUSTMENTS TO YOUR PREMIUM WILL BE REFLECTED ON YOUR
NEXT SCHEDULED STATEMENT WHICH WILL BE MAILED SEPARATELY.

803714 01/27 90264700 70 HR

b.  Scheduled Residence Glass. We will not pay more than the smallest of the following:

(1)  actual cash value of the property at the time of the loss;

(2)  the cost to repair the damaged property with like kind and quality or replace the glass with safety glazing material when required by ordinance or law; or

(3)  the limit of liability stated in the schedule below.

c.  Pair or Set. If loss to an article which is part of a pair or set occurs, we will measure the loss at a reasonable and fair proportion of the total value of the pair or set giving consideration to the importance of the article.

We will not pay a total loss to the pair or set when the loss is to an article that is part of a pair or set.

d.  We may pay for the loss in money or may repair or replace the property. Any property we pay for or replace will become our property.

## SCHEDULED RESIDENCE GLASS

| Number of Plates | Length in Inches | Width in Inches | Description of Glass, Lettering and Ornamentation; Position in Building. The glass is plain flat glass with all edges set in frames, unless otherwise stated herein. | Specific Limit (if any) | Premium |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Total Scheduled Glass Premium  $

Your Duties After Loss. In case of loss to covered property, you must:

a.  give prompt written notice to us.

b.  file a proof of loss at our request, on forms that we provide. If we request a proof of loss, we must request it not later than the 15th day after we receive your written notice. We may require this filing of proof of loss to be under oath.

Action Against Us.  There can be no action against us unless you have complied with all the terms of this policy.

Other Insurance.  If a loss covered under this endorsement is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this endorsement bears to the total amount of valid and collectible insurance covering the loss.

scribed by the State Board of Insurance
orsement No. HO-105 - Residence Glass Coverage - Effective July 8, 1992

–  2  –



**ENDORSEMENT NO. HO-105**
Effective
July 8, 1992

**RESIDENCE GLASS COVERAGE**

The terms and conditions of this endorsement apply only to the property described in this endorsement. None of the terms, conditions and limits of liability stated in the policy apply to this endorsement except the Waiver or Change of Policy Provisions, Cancellation, Assignment, Subrogation and Definitions.

This insurance applies to:(check the box(es) that applies)

☐ Unscheduled Glass;

☐ Scheduled Glass described in the schedule below;

while in or on the dwelling or other structures on the <u>residence premises</u>.

1. Residence Glass Coverage. We will pay for damages to residence glass caused by breakage of or by chemicals applied to such glass if:

   a. described in the schedule below.

   b. permanently attached to the dwelling or other structures on the <u>residence premises</u>, including storm windows and doors not permanently attached.

   We will also pay for making temporary repairs, resulting damage to encasing frames, and removing or replacing obstructions because of a covered loss to glass.

2. Exclusions. We will not pay for loss or damage caused by:

   a. fire.

   b. war. This includes undeclared war, civil war, insurrection, rebellion or revolution or any consequence of these.

   c. nuclear reaction, nuclear radiation or radioactive contamination or any consequence of these.

3. Loss Settlement.

   a. Unscheduled Residence Glass. We will not pay more than:

      (1) $100 for all damage in any one occurrence for each of the following objects:

         (a) multiple plate insulating units;
         (b) radiant heating panels;
         (c) conservatory or greenhouse glass;
         (d) chandeliers or light fixtures;
         (e) jalousies, louvers or shutters;
         (f) venetian type doors or windows;
         (g) stained or leaded glass; or
         (h) glass bricks, shingles or other structural glass.

      (2) $100 for any one pane or plate of glass comprising any other object not listed in 3.a.(1) above.

# Allstate Insurance Company
A Stock Company

Policy Number:
For Premium Period Effective: .

Your Agent:

## REPLACEMENT OF
## PERSONAL PROPERTY

## ENDORSEMENT NO. HO-101
### Effective October 2, 1993

**SECTION I PROPERTY COVERAGE**

For an included additional premium, our limit of liability and payment for covered loss to:

1. personal property; and

2. wall-to-wall carpeting and cloth awning (Forms HO-B & HO-C only);

is extended to include Replacement Cost. Replacement Cost means there will not be a deduction for depreciation. Payment will not exceed the smallest of the following:

    a. the Coverage B (Personal Property) limit of liability;

    b. the replacement cost at the time of loss;

    c. for property that is repairable, the cost of repair with material of like kind and quality with no deduction for depreciation; or,

    d. the interest of the <u>insured</u>.

We do not pay replacement cost for:

    a. property which cannot be replaced.

    b. property not maintained in good or workable condition.

    c. property that is either obsolete or useless to the <u>insured</u> at the time of loss.

    d. watercraft including outboard motors for any replacement cost in excess of $2,500.

        We will pay placement cost of watercraft including outboard motors up to a limit of $2,500.

Prescribed by the State Board of Insurance
Endorsement No. HO-101 — Replacement of Personal Property — Effective October 2, 1993

Page 1

PROP `110004299090957022411717`



# Allstate Insurance Company
A Stock Company

Policy Number:                              Your Agent:
For Premium Period Effective:

    e.  Property that is not repaired or replaced.

Loss Settlement:

    a.  We will pay you:

        1.  the replacement cost of your damaged property up to $1,500; and

        2.  the actual cash value of your remaining damaged property within 5 business days after we notify you that we will pay the claim.

        If you repair or replace the damaged property, you may make claim for reimbursement on a replacement cost basis for the replacement cost of your property exceeding $1,500. You must repair, restore or replace the property within 365 days after the loss. Reimbursement will be made within 5 business days after we receive proof that the property has been repaired, restored or replaced.

    b.  In lieu of (a.) above, we may offer and you may accept or reject our offer to provide a replacement item of like kind and quality for your damaged property.

# Allstate
# Texas Homeowners Policy
# Form B



Prescribed by the Texas Department of Insurance
Homeowners Form B—Effective July 8, 1992
(Revised January 1, 1996)

PROP *11000420004063780347321107*

AU2131-1

# QUICK REFERENCE
## TEXAS HOMEOWNERS POLICY — FORM B

Insuring Agreement ........................................ 2
Definitions .................................................. 2

SECTION I — PROPERTY COVERAGE

Coverage A
  Dwelling ................................................. 3
  Other Structures ...................................... 3
Coverage B
  Personal Property ..................................... 3
  Personal Property Off Premises ................. 3
Special Limits of Liability ............................. 4
Property Not Covered ................................... 4
Extensions of Coverage
  Debris Removal ........................................ 5
  Loss of Use ............................................. 5
  Reasonable Repairs .................................. 5
  Trees, Shrubs, Plants and Lawns ............... 5
  Property Removed ..................................... 5
  Consequential Loss .................................. 5
  Automatic Removal ................................... 6
Perils Insured Against
  Coverage A (Dwelling) .............................. 6
  Coverage B (Personal Property) ................. 6

Exclusions ................................................. 7

Deductibles ............................................... 9

Section I — Conditions
  Insurable Interest and Limit of Liability ...... 9
  Residential Community Property Clause ..... 9
  Duties After Loss
    Your Duties After Loss ......................... 9
    Our Duties After Loss ......................... 10
  Loss Settlement ...................................... 11
  Loss to a Pair or Set ............................... 12
  Salvage Rights ........................................ 12
  Appraisal ............................................... 12
  Loss Payment ......................................... 12
  Catastrophe Claims ................................. 12
  Other Insurance ...................................... 13
  Suit Against Us ....................................... 13
  Abandonment of Property ......................... 13
  Vacancy — Suspension of Coverage ....... 13
  Mortgage Clause ..................................... 13
  No Benefit to Bailee ................................ 14

SECTION II — LIABILITY COVERAGE

Coverage C (Personal Liability) .................. 14
Coverage D (Medical Payments to Others) .... 14

Exclusions
  Coverage C and D Exclusions .................. 15
  Coverage C Exclusions ............................ 17
  Coverage D Exclusions ............................ 17

Additional Coverages
  Claim Expenses ...................................... 18
  Imperative Medical Expenses to Others ..... 18
  Damage to Property of Others ................... 18

Section II — Conditions
  Limit of Liability ..................................... 18
  Severability of Insurance ......................... 19
  Duties After Loss .................................... 19
  Duties of an Injured Person ...................... 19
  Payment of Claim under Coverage D ........ 19
  Suit Against Us ....................................... 19
  Bankruptcy of the Insured ........................ 19
  Other Insurance ...................................... 20
  Notice of Settlement of Liability Claim ....... 20

POLICY CONDITIONS
APPLYING TO SECTIONS I AND II

Policy Period ............................................ 20
Concealment or Fraud ............................... 20
Liberalization Clause ................................. 20
Waiver or Change of Policy Provisions ........ 20
Cancellation ............................................. 20
Refusal to Renew ..................................... 21
Assignment .............................................. 21
Subrogation ............................................. 21
Death ...................................................... 22

---

### YOUR DUTIES AFTER A LOSS

Section I:

1. Protect the property from further damage.
2. Give prompt written notice to the company.
3. Call the police if a law has been broken.
4. Make a list of all damaged personal property, including costs.
5. If requested, obtain proof of loss form from your agent or the company and submit within 91 days of the request.

Section II:

1. Do not make any voluntary payment except for first aid to others at the time of the accident.
2. Give written notice to agent or company, including details about the accident and any witnesses.
3. Send copies of legal notices you receive to the company.
4. Help the company get the necessary information to make settlement.

FOR A COMPLETE LIST OF YOUR DUTIES SEE PAGES 9 AND 19 OF YOUR POLICY.

# HOMEOWNERS FORM B

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, 'you' and 'your' refer to the 'named insured' shown on the declarations page and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease. This includes required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Business day," when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. "Insured" means you and residents of your household who are:

    a. your relatives; or

    b. other persons under the age of 21 and in the care of any person named above.

    Under Section II Liability, "Insured" also means:

    c. any person or organization legally responsible for animals or watercraft to which this policy applies. You or a person included in 4.a. or 4.b. above must own the animal or watercraft. A person or organization using or having custody of these animals or watercraft without consent of the owner is not an insured.

d. With respect to any vehicle to which this policy applies:

    (1) any employee of an insured while engaged in the employment of the insured; or

    (2) any other person using the vehicle on an insured location with your consent.

5. "Insured location" means:

    a. the residence premises.

    b. the part of other premises, other structures and grounds you use as a residence and:

        (1) which is shown on the declaration page; or

        (2) which you acquire during the policy period for your use as a residence.

    c. any premises you use in connection with a premises in 5.a. or 5.b. above.

    d. any part of a premises:

        (1) not owned by an insured; and

        (2) where an insured is temporarily residing.

    e. vacant land, other than farm land, owned by or rented to an insured.

HO-B

PROP *11000420004000572047921006*


f.  land owned by or rented to an <u>insured</u> on which a one or two family dwelling is being built as a residence for an <u>insured</u>.

g.  individual or family cemetery plots or burial vaults of an <u>insured</u>.

h.  any part of a premises occasionally rented to an <u>insured</u> for other than <u>business</u> use.

6.  "<u>Occurrence</u>" means an accident, including exposure to conditions, which result in <u>bodily injury</u> or <u>property damage</u> during the policy period.

7.  "<u>Property damage</u>" means injury to, destruction of, or loss of use of property.

8.  "<u>Residence employee</u>" means an employee of an <u>insured</u> who performs duties related to the ownership, maintenance or use of the <u>residence premises</u>, including maintenance or use of a motor vehicle. This includes employees who perform similar duties elsewhere for an <u>insured</u>. This does not include employees while performing duties related to the <u>business</u> of an <u>insured</u>.

9.  "<u>Residence premises</u>" means the <u>residence premises</u> shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an <u>insured</u> resides or intends to reside within 60 days after the effective date of the policy.

## SECTION I — PROPERTY COVERAGE

### COVERAGE A (DWELLING)

We cover:

1.  the dwelling on the <u>residence premises</u> shown on the declarations page including structures attached to the dwelling.

2.  other structures on the <u>residence premises</u> set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

    The total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of the Coverage A (Dwelling) limit of liability, whichever is greater. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

    We do not cover other structures:

    a.  used for business purposes; or

    b.  wholly rented to any person, unless used solely as a private garage.

3.  wall to wall carpeting attached to a building on the <u>residence premises</u>.

### COVERAGE B (PERSONAL PROPERTY)

We cover:

1.  a.  personal property owned, worn or used by an <u>insured</u> while on the <u>residence premises</u>. This includes window or wall air conditioning units.

    b.  at your request, property of others while the property is on the part of the <u>residence premises</u> occupied by an <u>insured</u>.

2.  a.  personal property owned, worn or used by an <u>insured</u> anywhere in the world.

    b.  at your request, personal property of a <u>residence employee</u> when:

        (1)  the property is away from the residence premises of the <u>residence employee</u> and in the control of the <u>residence employee</u>; and

HO-B

(2)  while the residence employee is
      performing work for you.

Our total limit of liability under 2.a. and 2.b.
above is 10% of the Coverage B (Personal
Property) limit of liability or $1000,
whichever is greater. This is additional
insurance and does not reduce the
Coverage B (Personal Property) limit of
liability.

SPECIAL LIMITS OF LIABILITY. These limits do not
increase the Coverage B (Personal Property) limit of
liability. The special limit for each numbered category
below is the total limit for each loss for all property in
that category.

1.  Money/Bank Cards. $100 on money or
    numismatic property or loss by theft or
    unauthorized use of bank fund transfer cards
    registered to an insured.

2.  Bullion/Valuable Papers. $500 on gold or silver
    bullion, manuscripts, notes, securities, stamps,
    philatelic property, accounts, bills, deeds,
    evidences of debt, letters of credit, passports,
    documents, transportation or other tickets.

3.  Jewelry/Watches/Furs. $500 for loss by theft of
    gems, watches, jewelry or furs.

4.  Business Personal Property. $2,500 on
    business property.

    We do not cover any business property:

    a.  that consists of samples or articles for sale
        or delivery; or

    b.  if the property is away from the residence
        premises.

PROPERTY NOT COVERED. We do not cover:

1.  articles separately described and specifically
    insured by this or other insurance.

2.  animals or birds.

3.  motor or engine propelled vehicles or machines
    designed for movement on land, including
    attached machinery or equipment.

    However, we do cover such vehicles which are
    not subject to motor vehicle registration and are:

    a.  devices and equipment for assisting the
        handicapped.

    b.  power mowers.

    c.  golf carts.

    d.  vehicles or machines used for recreational
        purposes while located on the residence
        premises.

    e.  farm equipment not designed for use
        principally on public roads.

4.  trailers, semi-trailers or mobile homes.

    However, we do cover:

    a.  trailers and semi-trailers that are designed
        for use principally off public roads; or

    b.  boat trailers while on the residence
        premises.

5.  aircraft meaning any device used or designed for
    flight, except model or hobby aircraft not used or
    designed to carry people or cargo.

6.  watercraft, including outboard motors and
    furnishings or equipment.

    We do cover watercraft, including outboard
    motors and furnishings or equipment, while
    located on land on the residence premises.

7.  property of roomers and tenants.

HO-B

PROP *11000420004065780478271099*

8.  property usually rented to others off the <u>residence premises</u>.

EXTENSIONS OF COVERAGE.

1.  DEBRIS REMOVAL. We will pay your expense for the removal from the <u>residence premises</u> of:

    a.  debris of covered property if a Peril Insured Against causes the loss.

    b.  a tree that has damaged covered property if a Peril Insured Against causes the tree to fall.

    This does not increase the limit of liability that applies to the damaged property.

2.  LOSS OF USE. If a loss caused by a Peril Insured Against under Section I makes the <u>residence premises</u> wholly or partially untenantable, we cover:

    a.  additional living expense, meaning any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

    b.  fair rental value, meaning the fair rental value of that part of the residence premises usually rented to other by you, less any expenses that do not continue.

    The total limit of liability for all loss of use is 20% of the Coverage A (Dwelling) limit of liability. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to loss of use coverage.

    Payment will be for the reasonable time required to repair or replace the damaged property. If you permanently relocate, payment will be for the reasonable time required for your household to become settled.

The periods of time for loss of use are not limited by expiration of this policy.

3.  REASONABLE REPAIRS. If a Peril Insured Against causes the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4.  TREES, SHRUBS, PLANTS AND LAWNS. We cover trees, shrubs, plants and lawns, on the <u>residence premises</u>, only for loss caused by the following Perils Insured Against Fire or Lightning, Explosion, Aircraft, Vehicles not owned or operated by a resident of the <u>residence premises</u>, Vandalism and Malicious Mischief, Riot and Civil Commotion and Theft or attempted theft.

    The maximum limit of liability for this coverage is 5% of the Coverage A (Dwelling) limit of liability. We will not pay more than $250 for any one tree, shrub or plant, including the cost of removal. We do not cover property grown for <u>business</u> purposes.

    This is not additional insurance and does not increase the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to trees, shrubs, plants and lawns.

5.  PROPERTY REMOVED. We pay for expense and damage incurred in the removal of covered property from an <u>insured location</u> endangered by a Peril Insured Against. This coverage exists on a pro rata basis for 30 days at each location to which such property is removed for preservation. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

6.  CONSEQUENTIAL LOSS. We insure:

    a.  property contained in a building on the <u>residence premises</u> against loss due to

HO-B

change in temperature as a direct result of physical damage to the dwelling, or any equipment contained in the dwelling, caused by a Peril Insured Against. The deductible clause does not apply to this coverage.

b.   property contained in a building on the residence premises against a loss due to change in temperature as a direct result of physical damage to any power, heating or cooling equipment (including connections and supply pipes) not contained in or on the dwelling, caused by a Peril Insured Against.

The total limit of liability for the coverage described in 6.b. above is $500. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

7.   AUTOMATIC REMOVAL. If you move from the residence premises shown on the declarations page to another location within the United States, to be occupied as your principal residence, we cover:

a.   the personal property under Coverage B (Personal Property) at each location in the proportion that the value at each location bears to the total value of all the personal property covered under Coverage B (Personal Property).

b.   property in transit up to 10% of the Coverage B (Personal Property) limit of liability or $1,000, whichever is greater.

We provide coverage for only 30 days from the date the removal begins.

---

## SECTION I— PERILS INSURED AGAINST

### COVERAGE A (DWELLING)

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

### COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1.   Fire and Lightning.

2.   Sudden and Accidental Damage from Smoke.

3.   Windstorm, Hurricane and Hail.

4.   Explosion.

5.   Aircraft and Vehicles.

6.   Vandalism and Malicious Mischief.

7.   Riot and Civil Commotion.

8.   Collapse of Building or any part of the building.

9.   Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating, or air conditioning system or household appliance.

A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

HO-B

PROP '11000472000406372347321110'



10. Falling Objects.

This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. Freezing of household appliances.

12. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

## SECTION I — EXCLUSIONS

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

   a. We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

   b. We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

   c. We do not cover loss caused by windstorm, hurricane or hail to:

      (1) cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

      (2) radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, windchargers and windmills.

      (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

   d. We do not cover loss of the following property by theft, including attempted theft and loss of property from a known place

when it is likely that the property has been stolen.

   (1) personal property while away from the residence premises at any other residence owned by, rented to or occupied by an insured, except while an insured is temporarily living there.

   (2) building materials and supplies not on the residence premises.

   e. We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

   f. We do not cover loss caused by:

      (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

      (2) rust, rot, mold or other fungi.

      (3) dampness of atmosphere, extremes of temperature.

      (4) contamination.

      (5) rats, mice, termites, moths or other insects.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

HO-B

g.  We do not cover loss caused by animals or birds owned or kept by an insured or occupant of the residence premises.

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

h.  We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

i.  We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind.

We cover an ensuing loss by theft or attempted theft or any act or attempted act of stealing.

j.  We do not cover loss caused by or resulting from freezing while the building is unoccupied unless you have used reasonable care to:

(1)  maintain heat in the building; or

(2)  shut off the water supply and drain plumbing, heating and air conditioning systems of water.

k.  We do not cover loss caused by earthquake, landslide or earth movement.

2.  GOVERNMENTAL ACTION.

We do not cover loss caused by the destruction of property by order of governmental authority.

But we do cover loss caused by acts of destruction ordered by governmental authority taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

3.  BUILDING LAWS.

We do not cover loss caused by or resulting from the enforcement of any ordinance or law regulating the construction, repair or demolition of a building or structure.

4.  WAR DAMAGE.

We do not cover loss resulting directly or indirectly from war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

5.  NUCLEAR DAMAGE.

We do not cover loss resulting directly or indirectly from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused. We cover direct loss by fire resulting from nuclear reaction, radiation or radioactive contamination.

HO-B

Page 8

PROP "110004200040637004792111"



## SECTION I — DEDUCTIBLES

DEDUCTIBLE CLAUSE 1 — WINDSTORM, HURRICANE, HAIL OR WIND DRIVEN RAIN — The amount shown on the declarations page for Deductible Clause 1 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property) that results from windstorm, hurricane, hail or wind driven rain.

DEDUCTIBLE CLAUSE 2 — ALL OTHER PERILS — The amount shown on the declarations page for Deductible Clause 2 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property), unless the loss results from windstorm, hurricane, hail or wind driven rain.

If a single event causes loss by windstorm, hurricane, hail or wind driven rain and loss by lightning, only the larger deductible will apply.

## SECTION I — CONDITIONS

1. Insurable Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to the insured for more than the amount of the insured's interest at the time of loss; or

   b. for more than the applicable limit of liability.

   Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

   Article 6.13. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2. Residential Community Property Clause. This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force

and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3. Duties After Loss.

   a  Your Duties After Loss. In case of a loss to covered property caused by a peril insured against, you must

      (1) give prompt written notice to us of the facts relating to the claim.

      (2) notify the police in case of loss by theft.

      (3) (a) protect the property from further damage.

          (b) make reasonable and necessary repairs to protect the property.

          (c) keep an accurate record of repair expenses.

(4) furnish a complete inventory of damaged personal property showing the quantity, description and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

(5) as often as we reasonably require:

   (a) provide us access to the damaged property.

   (b) provide us with pertinent records and documents we request and permit us to make copies.

   (c) submit to examination under oath and sign and swear to it.

(6) send to us if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us. We must request a signed sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

   (a) This proof of loss shall state, to the best of your knowledge and belief:

      (i) the time and cause of loss;

      (ii) the interest of the <u>insured</u> and all others in the property involved including all liens on the property.

      (iii) other insurance which may cover the loss.

      (iv) the actual cash value of each item of property and the amount of loss to each item.

   (b) If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

      (i) the replacement cost of the described dwelling.

      (ii) the replacement cost of any other building on which loss is claimed.

      (iii) the full cost of repair or replacement of loss without deduction for depreciation.

b. Our Duties After Loss.

   (1) Within 15 days after we receive your written notice of claim, we must

      (a) acknowledge receipt of the claim.

      If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

      (b) begin any investigation of the claim.

      (c) specify the information you must provide in accordance with "Your Duties After Loss" (item 3.a. above).

      We may request more information, if during the investigation of the claim such additional information is necessary.

   (2) After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

HO-B

PROP ° 11000470000406570347921177

(a)   within 15 business days; or

(b)   within 30 days if we have reason
      to believe the loss resulted from
      arson.

(3)   If we do not approve payment of your
      claim or require more time for
      processing your claim, we must:

   (a)   give the reasons for denying your
         claim; or

   (b)   give the reasons we require more
         time to process your claim. But,
         we must either approve or deny
         your claim within 45 days after
         requesting more time.

4.   Loss Settlement. Covered property losses are
     settled as follows:

a.   Our limit of liability and payment for covered
     losses to personal property, wall to wall
     carpeting, cloth awnings and fences will not
     exceed the smallest of the following:

   (1)   the actual cash value at the time of loss
         determined with proper deduction for
         depreciation.

   (2)   the cost to repair or replace the
         damaged property with material of like
         kind and quality, with proper deduction
         for depreciation; or

   (3)   the specified limit of liability of the
         policy.

b.   Our limit of liability for covered losses to
     dwelling and other structure(s) under
     Coverage A (Dwelling), except wall to wall
     carpeting, cloth awnings and fences, will be
     at replacement cost settlement subject to
     the following:

(1)   If, at the time of loss, the Coverage A
      (Dwelling) limit of liability is 80% or
      more of the full replacement cost of the
      dwelling, we will pay the repair or
      replacement cost of the damaged
      building structure(s), without
      deduction for depreciation.

(2)   If, at the time of loss, the Coverage A
      (Dwelling) limit of liability is less than
      80% of the full replacement cost of the
      dwelling, we will pay only a
      proportionate share of the full
      replacement cost of the damaged
      building structure(s). Our share is
      equal to:

      Replacement Cost of the Loss
                    X
      Coverage A (Dwelling) Limit of Liability
      80% of Replacement Cost of the Dwelling

(3)   If, at the time of loss, the actual cash
      value of the damaged building
      structure(s) is greater than the
      replacement cost determined under (1)
      or (2) above, we will pay the actual
      cash value up to the applicable limit of
      liability.

In determining the amount of insurance
required to equal 80% of the full
replacement cost of the dwelling, do not
include the value of excavations,
underground pipes, and wiring and
foundations which are below the surface of
the ground.

We will pay only the actual cash value of the
damaged building structure(s) until repair or
replacement is completed. Repair or
replacement must be completed within 365
days after loss unless you request in writing
that this time limit be extended for an
additional 180 days. Upon completion of
repairs or replacement, we will pay the
additional amount claimed under

HO-B

replacement cost coverage, but our payment will not exceed the smallest of the following:

(1) the limit of liability under this policy applicable to the damaged or destroyed building structure(s);

(2) the cost to repair or replace that part of the building structure(s) damaged, with material of like kind and quality and for the same use and occupancy on the same premises; or

(3) the amount actually and necessarily spent to repair or replace the damaged building structure(s).

5. Loss to a Pair or Set. In case of loss to an item which is part of a pair or set, the measure of loss shall be a reasonable and fair proportion of the total value of the pair or set. The importance of the item will be considered in assessing the loss. Such loss will not be considered a total loss of the pair or set.

6. Salvage Rights. If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

7. Appraisal. If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will than set the amount of loss, stating separately the actual cash value and loss to each item. If you or we

request that they do so, the appraisers will also set

a. the full replacement cost of the dwelling.

b. the full replacement cost of any other building upon which loss is claimed.

c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

8. Loss Payment.

a. If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you.

b. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

9. Catastrophe Claims.

If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a. is declared a disaster under the Texas Disaster Act of 1975; or

PROP *11000420004063702470211D*


b.  is determined to be a catastrophe by the State Board of Insurance.

10. Other Insurance — Section I. Other insurance is permitted on property covered by this policy, but other insurance covering the dwelling is not permitted. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

11. Suit Against Us. No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

12. Abandonment or Property. There can be no abandonment of property to us.

13. Vacancy. If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. The coverage will remain suspended during such vacancy.

14. Mortgage Clause (without contribution).

a.  The word 'mortgagee' includes trustee.

b.  We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

c.  The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has

the right to receive loss payment if the mortgagee:

(1)  at our request, pays any premiums due under this policy, if you have failed to do so.

(2)  submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

(3)  has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

e.  If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you failed to comply with the terms of this policy:

(1)  the mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

(2)  the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

HO-B

If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g.  If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

h.  If we elect not to renew the policy, the mortgagee specifically named on the declarations page will be given 30 days written notice of the non-renewal.

15.  No Benefit to Bailee. We will not recognize any assignment or grant any coverage for the benefit of a person or organization holding, storing or moving property for a fee.

## SECTION II — LIABILITY COVERAGE

**COVERAGE C (Personal Liability)**

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1.  pay up to our limit of liability for the damages for which the insured is legally liable. Damages include pre-judgment interest awarded against the insured; and

2.  provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

**COVERAGE D (Medical Payments to Others)**

We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital,

professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household. This coverage does apply to residence employees. As to others, this coverage applies only:

1.  to a person on the insured location with the permission of an insured.

2.  to a person off the insured location, if the bodily injury:

a.  arises out of a condition on the insured location or the ways immediately adjoining.

b.  is caused by the activities of an insured.

c.  is caused by a residence employee in the course of the residence employee's employment by an insured.

d.  is caused by an animal owned by or in the care of an insured.

HO-B

Page 14



---

## SECTION II — EXCLUSIONS

---

1. Coverage C (Personal Liability) and Coverage D (Medical Payments to Others) do not apply to:

   a.  bodily injury or property damage which is caused intentionally by or at the direction of the insured;

   b.  bodily injury or property damage arising out of or in connection with a business engaged in by an insured. But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

   c.  bodily injury or property damage arising out of the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply to the rental or holding for rental of an insured location:

       (1) on an occasional basis if used only as a residence.

       (2). in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders.

       (3) in part, as an office, school or studio.

       (4) if the rental is for not more than three car spaces or stalls in garages or stables.

   d.  bodily injury or property damage arising out of the rendering of or failure to render professional services.

   e.  bodily injury or property damage arising out of a premises:

       (1) owned by an insured;

       (2) rented to an insured; or

       (3) rented to others by an insured;

       that is not an insured location.

   This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured.

   f.  bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

       (1) motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment;

       (2) trailers, semi-trailers or mobile homes;

       which are owned or operated by or rented or loaned to an insured.

   However, this exclusion does not apply to:

       (1) motor vehicles which are not subject to motor vehicle registration and are:

           (a) used for assisting the handicapped.

           (b) used to service an insured location.

           (c) golf carts while on the residence premises or used for golfing purposes.

           (d) designed and used for recreational purposes, and are:

               (i) not owned by an insured; or

HO-B

(ii)  owned by an <u>insured</u> while on the <u>residence premises</u>.

(e)  in dead storage on the <u>residence premises</u>.

(f)  used exclusively on the <u>residence premises</u>.

(2)  trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to <u>bodily injury</u> to a <u>residence employee</u> arising out of and in the course of the <u>residence employee's</u> employment by an <u>insured</u>.

g.  <u>bodily injury</u> or <u>property damage</u> arising out of the ownership, maintenance, operation, use, loading or unloading of watercraft:

(1)  with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an <u>insured</u>.

(2)  powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an <u>insured</u>. But, outboard motors of more than 25 total horsepower are covered for the policy period if:

(a)  you acquire them prior to the policy period and:

(i)  you declare them at policy inception; or

(ii)  your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

(b)  you acquire them during the policy period.

(3)  that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an <u>insured</u>.

This exclusion does not apply while the watercraft is on the <u>residence premises</u>.

This exclusion does not apply to <u>bodily injury</u> to a <u>residence employee</u> arising out of and in the course of the <u>residence employee's</u> employment by an <u>insured</u>.

h.  <u>bodily injury</u> or <u>property damage</u> arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft.

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to <u>bodily injury</u> to a <u>residence employee</u> arising out of and in the course of the <u>residence employee's</u> employment by an <u>insured</u>.

<u>bodily injury</u> or <u>property damage</u> arising out of:

(1)  the entrustment by an <u>insured</u> to any person; or

(2)  the negligent supervision by an <u>insured</u> of any person;

with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f., g. or h. above.

This exclusion does not apply to <u>bodily injury</u> to a <u>residence employee</u> arising out of and in the course of the <u>residence employee's</u> employment by an <u>insured</u>.

PROP *11000420004065785478211S*

j.  bodily injury or property damage caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k.  bodily injury or property damage arising out of the transmission of sickness or disease by an insured through sexual contact.

l.  bodily injury to any person eligible to receive any benefits voluntarily provided or required to be provided by an insured under any workers' compensation law or occupational disease law.

2.  Coverage C (Personal Liability) does not apply to:

a.  liability under any contract or agreement.

However, this exclusion does not apply to written contracts:

(1)  that directly relate to the ownership, maintenance or use of an insured location; or

(2)  where the liability of others is assumed by an insured;

unless excluded elsewhere in this policy.

b.  property damage to property owned by an insured.

c.  property damage to property rented to, occupied or used by or in the care of an insured.

This exclusion does not apply to property damage caused by fire, smoke or explosion.

d.  bodily injury or property damage for which an insured under this policy is also an insured under a nuclear energy liability policy or would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada.

e.  bodily injury to you or an insured within the meaning of part a. or part b. of insured as defined.

3.  Coverage D (Medical Payments to Others) does not apply to:

a.  bodily injury to a residence employee if the bodily injury:

(1)  occurs off the insured location; and

(2)  does not arise out of or in the course of the residence employee's employment by an insured.

b.  bodily injury to any person, other than a residence employee of an insured, regularly residing on any part of the insured location.

HO-B

## SECTION II — ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

   a. expenses we incur and costs taxed against an insured in any suit we defend.

   b. premiums on bonds required in a suit we defend but not for bond amounts more than the limit of liability for Coverage C (Personal Liability). We need not apply for or furnish any bond.

   c. reasonable expenses incurred by an insured at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit.

   d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. Imperative Medical Expense to Others. We pay expenses incurred by an insured for immediate medical and surgical relief to others if imperative at the time of the accident.

3. Damage to Property of Others. We pay replacement cost up to $500 per occurrence for

property damage to property of others caused by an insured.

We do not pay for property damage:

   a. caused intentionally by an insured who is 13 years of age or older.

   b. to property owned by an insured.

   c. to property owned by or rented to a tenant of an insured or a resident in your household.

   d. arising out of:

      (1) a business engaged in by an insured.

      (2) any act or omission in connection with a premises owned, rented or controlled by an insured, other than the insured location.

      (3) the ownership, maintenance, use, loading or unloading of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to any motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an insured.

## SECTION II — CONDITIONS

1. Limit of Liability. The limit of liability for Coverage C (Personal Liability) shown on the declarations page is our total liability under Coverage C (Personal Liability) for all damages resulting from any one occurrence. This limit is

the same regardless of the number of insureds, claims made or persons injured.

The limit of liability for Coverage D (Medical Payments to Others) shown on the declarations page is our total liability under Coverage D

HO-B

Page 18

PROP "11000470004065710479211F"


(Medical Payments to Others) for all medical expense payable for bodily injury to one person as the result of one accident. The total limit of our liability for all expenses payable to two or more persons injured in one accident is $25,000.

2.  Severability of Insurance. This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence.

3.  Duties After Loss. In case of an accident or occurrence, the insured will perform the following duties that apply or will help us by seeing that these duties are preformed:

    a.  Give written notice to us or our agent as soon as is practical, which sets forth:

        (1)  the identity of the policy and insured.

        (2)  reasonably available information on the time, place and circumstances of the accident or occurrence.

        (3)  names and addresses of any claimants and witnesses.

    b.  Promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence.

    c.  At our request, help us:

        (1)  to make settlement.

        (2)  to enforce any right of contribution or indemnity against any person or organization who may be liable to an insured.

        (3)  with the conduct of suits, including attending hearings and trials.

        (4)  to secure evidence and obtain the attendance of witnesses.

    d.  The insured will not, except at the insured's own cost, voluntarily make payment, assume obligation or incur expense other than for immediate medical and surgical relief to others at the time of the bodily injury.

4.  Duties of an Injured Person — Coverage D (Medical Payments to Others).

    The injured person or someone acting for the injured person will:

    a.  give us written proof of claim, under oath if required, as soon as is practical.

    b.  authorize us to obtain copies of medical reports and records.

    The injured person will submit to a physical exam by a doctor our choice when and as often as we reasonably require.

5.  Payment of Claim — Coverage D (Medical Payments to Others). Payment under this coverage is not an admission of liability by an insured or us.

6.  Suit Against Us. No action can be brought against us unless there has been compliance with the policy provisions.

    No one will have the right to join us as a party to any action against an insured. Also, no action with respect to Coverage C (Personal Liability) can be brought against us until the obligation of the insured has been determined by final judgment or agreement.

    Under Coverage D (Medical Payment to Others), no action can be brought until 30 days after the required proofs of claim have been filed with us.

7.  Bankruptcy of the Insured. Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

HO-B

8. Other Insurance — Section II. If the insured has other insurance under Coverage C (Personal Liability), we will not be liable for a greater proportion of a loss than the limit of liability shown on the declarations page bears to the total limit of all valid and collectible insurance against such loss.

However, with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of:

a. any motor vehicle or recreational vehicle at the residence premises; or

b. watercraft,

this policy will not apply to the extent that any valid and collectible insurance is available to the insured.

9. Notice of Settlement of Liability Claim.

a. We will notify the insured in writing of any initial offer to compromise or settle a claim against the insured under the liability section of this policy. We will give the insured notice within 10 days after the date the offer is made.

b. We will notify the insured in writing of any settlement of a claim against the insured under the liability section of this policy. We will give the insured notice within 30 days after the date of the settlement.

---

## SECTION I AND II — CONDITIONS

1. Policy Period. This policy applies only to loss in Section I or bodily injury or property damage in Section II which occurs during the policy period stated on the declarations page. . . .

2. Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

3. Liberalization Clause. If the State Board of Insurance adopts a revision which would broaden or extend the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened or extended coverage will immediately apply to this policy.

4. Waiver or Change of Policy Provisions. Changes in this policy may be made and perils added only by attaching a written endorsement

properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the provision to be waived. Our request for an appraisal or . . . examination will not waive any of our rights . . .

5. Cancellation.

a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

b. We may cancel this policy for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

(1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel this policy for any reason.

The effective date of cancellation cannot be before:

HO-B

PROP *11000420004065703475211†*



(a)  the 10th day after we mail notice if we cancel for non-payment of premium.

(b)  the 30th day after we mail notice if we cancel for any other reason.

(2)  If this policy has been in effect 90 days or more, we may not cancel this policy unless:

(a)  you do not pay the premium or any portion of the premium when due.

(b)  the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

(c)  you submit a fraudulent claim.

(d)  there is an increase in hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

c.  If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

d.  We may not cancel this policy solely because you are an elected official.

6.  Refusal to Renew.

a.  We may not refuse to renew this policy because of claims or losses resulting from natural causes.

b.  We may not refuse to renew this policy solely because you are an elected official.

c.  We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

d.  If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named in the declarations page, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

7.  Assignment. Assignment of this policy will not be valid unless we give our written consent.

8.  Subrogation. An <u>insured</u> may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

HO-B

# EXHIBIT "B"

FILED 3:20 O'CLOCK ____ M
AURORA DE LA GARZA DIST. CLERK
JAN - 7 2002
DISTRICT COURT OF CAMERON COUNTY, TEXAS
Elaine Guzman DEPUTY

NO. 2002-01-000077-D

| | | |
|---|---|---|
| DAVID M. GARCIA AND PATRICIA M. ZIMNY<br>Plaintiffs, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | 103rd JUDICIAL DISTRICT |
| | § | |
| TROY A. BOWER, SHARI R. BOWER<br>AND PEST COM, INC.<br>Defendants. | § | OF CAMERON COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COME David M. Garcia and Patricia M. Zimny, hereinafter called Plaintiffs, complaining of and about Troy A. Bower, Shari R. Bower and Pest Com, Inc., hereinafter called Defendants, and for cause of action show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiffs intend that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.    Plaintiff, David M. Garcia, is an individual.

3.    Plaintiff, Patricia M. Zimny, is an individual.

4.    Defendant Troy A. Bower, an individual, is a nonresident of the State of Texas. Said Defendant may be served with process at his home at the following address: B 4704 W Comm Drive, North Little Rock, Arkansas 72116 or P.O. Box 165032, Little Rock, Arkansas 72216. Service of said Defendant as described above can be effected by personal delivery.

5.    Defendant Shari R. Bower, an individual, is a nonresident of the State of Texas. Said Defendant may be served with process at her home at the following address: B 4704 W Comm Drive, North Little Rock, Arkansas 72116 or P.O. Box 165032, Little Rock, Arkansas 72216. Service of said Defendant as described above can be effected by personal delivery.

6.    Defendant Pest Com, Inc., a Corporation, may be served with a citation *directed to said Defendant's Registered Agent* Robert E. Boreaux at the following address: 1034 Lori Lane, Harlingen, Texas 78550. Service of said Defendant as described above can be effected by personal delivery.

### JURISDICTION AND VENUE

7.    The subject matter in controversy is within the Jurisdictional limits of this court.

8.    This court has jurisdiction over Defendant Troy A. Bower, because said Defendant purposefully availed himself of the privilege of conducting activities in the State of Texas and established

minimum contacts sufficient to confer jurisdiction over said Defendant, and the assumption of jurisdiction over Troy A. Bower will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

    9.    This court has jurisdiction over Defendant Shari R. Bower, because said Defendant purposefully availed herself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant, and the assumption of jurisdiction over Shari R. Bower will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

    10.    Venue in Cameron County is proper in this cause pursuant to Section 17.56 of the Texas Business and Commerce Code and under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## FACTS

    11.    On or about January 13, 2000, the Plaintiffs purchased a home in Harlingen, Texas from the Defendants. In connection with the sale of that home, the Defendants completed a "Sellers Disclosure Notice" as required by the Texas Property Code. On Page 2 of the "Sellers Disclosure Notice" the Defendants indicated that the home had previously been treated for termites, but that there was no active infestation of the home by termites. The Defendants also indicated that there was no previous damage to the home which had been repaired, and that there was no current damage needing repair.

    12.    In conjunction with purchasing the home, the Defendants hired, Defendant, Pest Com to conduct a termite inspection of the home. On January 3, 2000, Defendant, Pest Com conducted an inspection of the home through Ricardo Quintana, the technician assigned to conduct the inspection. The termite inspection indicated previous infestation of the home by termites, but no active infestation present in the home.

    13.    Immediately after closing on the purchase of the home, the Plaintiffs noticed what appeared to be evidence of termite infestation of the home. At that time, they contacted another pest-control operator to inspect the home for termite infestation. The pest-control operator found active infestation in the home. Since that time, the Plaintiffs have found pervasive termite infestation in their home, which has caused substantial damage to their home, as well as evidence of prior repairs to their home due to termite damage.

    14.    The Plaintiffs have found evidence indicating that Defendants, Bower, knew about the infestation of their home, because of the apparent repairs done to remedy the damage caused by the termite infestation.

## DECEPTIVE TRADE PRACTICES

    15.    Plaintiffs would show that Defendants engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41. et seq.), as alleged hereinbelow.

16. <u>Unconscionable Action or Course of Action</u>. Defendants engaged in an "unconscionable action or course of action" to the detriment of Plaintiffs as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiffs to a grossly unfair degree.

17. <u>Violations of Section 17.46(b)</u>. Defendants violated Section 17.46(b) of the Texas Business and Commerce Code, in that Defendants:

        (a) represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

        (b) represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

        (c) failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

18. <u>Breach of Warranties</u>. Plaintiffs would show that the following warranties were breached and therefore actionable under Section 17.50(a)(2) of the Texas Business and Commerce Code:

        (a) the implied warranty of fitness for a particular purpose; and

        (b) the implied warranty of merchantability.

19. <u>Producing Cause</u>. Plaintiffs would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiffs' damages more fully described hereinbelow.

20. <u>Reliance</u>. Plaintiffs would further show the acts, practices and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code were relied upon by Plaintiffs to Plaintiffs' detriment.

## COMMON LAW FRAUD

21. Plaintiffs further show that Defendants made material false representations to Plaintiffs with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiffs, and that Plaintiffs relied on these representations to their detriment.

22. Plaintiffs would further show that Defendants concealed or failed to disclose material facts within the knowledge of Defendants, that Defendants knew that Plaintiffs did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Defendants intended to induce Plaintiffs to enter into the transaction made the basis of this suit by such concealment or failure to disclose.

23. As a proximate result of such fraud, Plaintiffs sustained the damages described more fully hereinbelow.

## NEGLIGENCE

24.   In the course of the transactions between Plaintiffs and Defendants, Defendants owed Plaintiffs a duty to disclose any termite infestation or damage.

25.   Plaintiffs would show that Defendants failed to exercise ordinary care in performing such duty. The acts and/or omissions of Defendants described hereinabove by which Defendants breached such duty constitute a proximate cause of the damages of Plaintiffs described more fully hereinbelow, for which Defendants are liable to Plaintiffs.

## ECONOMIC AND ACTUAL DAMAGES

26.   Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described hereinabove:

        (a)    Out-of-pocket expenses,
        (b)    Loss of the "benefit of the bargain."
        (c)    Diminished or reduced market value.
        (d)    Costs of repairs.

## MULTIPLE DAMAGES

27.   Plaintiffs would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

28.   Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code.

## ATTORNEY'S FEES

29.   Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; and, (b) common law.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs, David M. Garcia and Patricia M. Zimny, respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants, jointly and severally, for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiffs may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

McCullough and McCullough

By: _____

Gene McCullough
Texas Bar No. 00794267
323 E. Jackson
P.O. Box 2244
Harlingen, Texas 78551-2244
Tel. (956)423-1234
Fax. (956)423-4976
Attorney for Plaintiffs David M. Garcia and Patricia M. Zimny

## PLAINTIFFS HEREBY DEMAND TRIAL BY JURY